WILLIAM SCHARFF, Respondent, v. JOHN H. JACKSON, Appellant.

Third Department, December 28, 1917.

Master and servant — negligence — employee injured by bag of cement which fell from pile in warehouse — evidence — trial — improper method of examining witness.

Plaintiff, who was injured by bags of cement falling upon him from a pile in a storehouse while he and another employee were engaged in taking bags from such pile and loading them on a truck, claimed that the floor of the defendant's warehouse, which was filled to capacity, shook or vibrated when a loaded truck of cement passed over it, thereby causing the bags to fall.

Evidence examined, and *held*, insufficient to establish that the trembling of the floor had any connection with the plaintiff's injury, and, therefore, the complaint should be dismissed.

Evidence that other bags had fallen down in the storehouse within a period of about six weeks was, under the circumstances, incompetent.

Improper method of examining witnesses criticized.

WOODWARD, J., dissented.

APPEAL by the defendant, John H. Jackson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 23d day of May, 1916, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Neile F. Towner*, for the appellant.

*Thomas Francis Woods*, for the respondent.

KELLOGG, P. J.:

Upon a former appeal (161 App. Div. 906) we affirmed a judgment in favor of the plaintiff, by a divided court. The

Court of Appeals (216 N. Y. 598) reversed that judgment upon the merits. That court does not review questions of fact, but bases its action upon questions of law only. Its decision meant that the judgment was erroneous because there were no facts shown upon which it could rest and, therefore, it was erroneous as matter of law.

We refer to the statement of facts made by the Court of Appeals. The plaintiff now contends that he has brought additional elements into the case. He urges that upon the former trial it was a mere matter of inference that the floor shook or vibrated when the loaded truck was moving over it at the time the bags fell, while now that fact affirmatively appears. This is a purely technical view of the evidence. Upon the former trial it appeared that the floor shook or vibrated whenever a loaded truck passed over it; therefore, necessarily, it must have shaken when the loaded truck passed over it upon this occasion. The Court of Appeals must have assumed the existence of every reasonable inference which this court might have found from the evidence.

The principal additional evidence alleged is that the testimony of Leonard and of the plaintiff shows that the bags of cement were piled with the lower course removed a little from the wall, and that each course placed upon it was placed nearer the wall, so that as you reached the top of the pile the bags were leaning against the wall on either side, with the result that they would not fall over into the passageway. Leonard apparently knew nothing about this pile of bags of cement in the northeast corner of the building; he was clearly swearing as to the ordinary method of piling bags of cement, and evidently where it could be done the method described by him would be proper. The plaintiff swears to the same effect in a general way; but the evidence of both of these witnesses is destroyed by the cross-examination of the plaintiff and the actual situation in that corner. The manner of piling described by them was impossible in the northeast corner, for the reason that a few feet from the corner, on the north and on the east side, were doors which slid into the corner, so that it was impossible that the bags could rest against the wall of the building upon either side. On plaintiff's cross-examination he admits that he swore upon the other

trial, and he wants to be understood upon this trial as saying, that the bags did not touch the side of the building or of the doors on either side, but that there was a space both at the top and the bottom of the pile of about six inches between the cement and the side of the building. So that if the evidence as to the proper method of piling bags amounts to anything, it shows conclusively that the bags in the northeast corner were not properly piled.

The defendant corporation took over this building and contents December 29, 1910, with the plaintiff and the other employees who had been working for the former owner. This accident took place February 16, 1911. The plaintiff swears that these bags were piled two months at least before the accident. They were, therefore, piled by the former owner and while the plaintiff was the principal man piling and removing cement from the building. The record, therefore, does not save the plaintiff from the objection placed by the Court of Appeals against his recovery.

Upon the former trial it appeared that bags of cement had fallen in the warehouse before the accident. It is now alleged that the evidence upon that subject is a little more elaborate than it was upon the former trial. That is immaterial, because the Court of Appeals, on reviewing the facts, was bound to take the evidence in the most favorable view to the plaintiff. Therefore, the evidence upon this trial does not strengthen the evidence upon the other trial with reference to the falling of the bags on previous occasions.

The warehouse was a large room with one floor, about 50 by 100 feet, and in the basement were pillars or posts, supported on which, and upon the foundation walls, were sleepers, upon which the heavy plank floor rested. From the enormous weight put upon the floor from time to time, the posts and pillars had settled irregularly, and more than the foundation wall of the building, with the result that the floor dished and sagged at all times towards the center, and more so when it was heavily loaded. There was no possible question about the security or safety of the floor. Wheeling a loaded truck over a large floor like this would necessarily cause the floor to vibrate or shake more or less. The evidence indicated that any floor of this size would be likewise affected,

and I think it is common experience with all that such a result follows in any large room, like a dancing hall, a storehouse, a big piazza or other place where quick, sharp movements are made. Undoubtedly, the timbers in the cellar were rough, and the evidence indicates that new timbers had been put in from time to time, especially near the doors where the heaviest trucking was taking place. The evidence as to the roughness and the general appearance of the timbers in the basement was addressed really to the prejudice and not to the judgment of the jurors. Evidently, the roughness, the season cracks in the timbers and the condition described in the evidence as to the appearance of the floor when viewed from the basement, would be that ordinarily found in any building used for a similar purpose. We conclude, therefore, that there is no substantial change in the evidence upon which the recovery is based.

Upon the disputed points the evidence in favor of the plaintiff does not at all times seem to be the voluntary statement of a witness, but the plaintiff has forced words into the mouth of a witness under such pressure that the witness allowed them to escape. The defendant's counsel and the court made an earnest effort to prevent the plaintiff from leading his witnesses, but plaintiff was so persistent and insidious that they were unable to control him. We find the examination of the witness Kirchner, apparently a fair, disinterested man, who was wheeling the truck which it is claimed caused the floor to vibrate, was unfair and prejudicial to the defendant. He was asked on his direct examination: " Q. Did you ever see bags of cement or of any of the building materials stored in this storehouse fall down there between January 1, 1911, and February 16, 1911, when there was any trucking going on over the floor? A. Well, I don't remember now. Q. Did you ever see bags of cement fall down there on the floor of the storehouse before this accident? * * * A. No." Plaintiff's counsel then, for the purpose of refreshing the memory of the witness, as he said, asked the witness if upon the former trial he did not swear as follows: " Q. Do you ever remember of seeing any bags of cement falling down there in the storehouse before Scharff was hurt? * * * A. Yes, sir. Q. How long, about, before Scharff was hurt, was that?

·Third Department, December, 1917.           [Vol. 180.

A. About two weeks." This was .objected to as incompetent and improper and the objection overruled, with exception. The witness was then asked on this trial:. " What is the answer to that? A. I said no, five years ago; I can't remember all this stuff. Q. Do you remember so testifying on the last trial as I have read to you here just now? A. Yes, sir, I remember what you read there. Q. Was that so? [Objection as incompetent and improper, overruled and exception.] A. If I testified the last time it must be so." We also further quote from the record: " Mr. Woods: * * * Pretty near cross-examining him? The Court: You certainly are. Mr. Woods: I am asking this to refresh his recollection. The Court: You premised your question with that I know. Mr. Woods: I will ask the question: Was your memory clearer on this fact in 1914, on the second trial, than it is now, Mr. Kirchner? A. Why, yes, sir."

Plaintiff desired later to get the full benefit of what he had drawn out in that manner, and on redirect examination asked the witness: " Now, what is your recollection as to whether any bags fell down in the storehouse between the first of the year 1911, and the time that Scharff was hurt February 16, 1911? " Over defendant's objection and exception the witness answered: " Well I don't remember. Q. That is all you are willing to say? A. Yes, sir. Q. That you can't remember? A. That is all."

It was clearly incompetent as bearing upon the issue here to show that other bags had fallen down in that storehouse within a period of about six weeks.

It is impossible to conceive that in a large storehouse like this, filled with cement, lime .and other material, which was constantly being moved, that some bags would not at times, under different handling, fall down.

There was an effort to make the plaintiff's evidence on this trial stronger than upon the other trial with reference to the bags falling down, and he was asked: " Q. Do you remember whether any bags fell down in this storehouse between the first of January and the time of your accident, yes or no? A. Yes, sir. Q. Did they fall ·down more than once while you were there? A. Yes, sir." It was not necessary for the defendant to object to this, as the court had

already ruled in the questions to Kirchner that it was competent. However, the defendant did move to strike it out as indefinite and for not showing that the conditions were the same as when the accident occurred. The court denied the motion and defendant excepted. Thereupon, counsel asked the questions: " What was taking place when those bags fell down that you have just spoken of? A. Shaking of cars or trucking over the floor. Q. Do you mean a handtruck? A. Yes, sir. Q. Do you remember who was wheeling the handtruck? [under objection] A. No, sir. * * * Q. Who were present when the bags fell down that you have just spoken about? * * * A. Who was there? Q. Yes, when the bags fell down; besides yourself who was there? A. That I could not tell. Q. How near to the bags were you when they fell down? A. Way off in one corner. Q. Was there anything else between you and the bags? A. That I couldn't say. Q. Could you see the bags,— you saw the bags? A. Yes, sir. Q. Could you see whether there was anybody between you and the bags? A. I couldn't see. Q. Was there anybody handling or touching the bags which fell down at that time? A. No, sir, there were not." The witness did not swear that any bags fell when trucks were crossing the floor; he in a vague way said that bags fell by the shaking from the cars or trucking over the floor. Plaintiff's evidence as to the condition in the basement related mostly to a different part of the building than the northeast corner. There is no suggestion by the plaintiff or by Kirchner that they saw any bags falling in the northeast corner or anywhere in that vicinity.

The important facts may be summarized as follows: There was a little place in the northeast corner of the storehouse, between the runway leading from the door on the east, the railroad side of the building, to the door on the north, the Fourth avenue side (a little space about twelve feet square) in which there were four columns of bags of cement which extended from the north side about six and one-half feet into the room. The bags did not touch either side of the building. They were about twelve inches long, about eight inches wide and about four inches high, piled with the broad sides towards the runway in which the plaintiff was standing with his truck at the time of the injury. The four columns extended

an equal length into the room and were of equal height, and formed a solid mass four feet by six feet and ten bags high. If the bags lay upon their wide sides as they naturally would, the height of the pile was about forty inches; if they lay upon their edges, an improbable situation, it would be about eighty inches.

The plaintiff and his companion came with a truck for the purpose of taking some of the bags from the top of the pile. The truck was an ordinary handtruck, with a capacity of six bags (about 600 pounds). To remove the bags, one of the men would take hold of either end of the bag and they would lift it from the pile onto the truck. They were standing, one at either end of one of the columns, ready to begin operations. The plaintiff says he did not see what his companion was doing but that he himself did not touch the pile. The companion swears that the plaintiff had his hands on the pile, but upon cross-examination said the hands were either on the pile or reaching towards it. It thus appears that at the time the bags fell the truck was properly placed to be loaded, the plaintiff standing at one end of the bags to be moved and his companion at the other, and as they were reaching to lift a bag, or were about to do so, one pile fell. At this time another workman, seventy feet away in the storehouse, was wheeling a barrel of cement, which weighed about 196 pounds. It is conceded that the floor vibrated, or trembled or shook somewhat, as the truck moved over it. The warehouse was full to capacity and a great weight was upon the floor, so that the moving truck could not have caused the floor to change its place, or vibrate or move very much. In some way some of the bags fell over and broke the plaintiff's legs. Evidently, the trembling or shaking of the floor would not loosen up the bags, but would tend to make the mass more solid. It cannot be that the slight trembling of the floor would change the center of gravity of the pile and cause it to fall upon the plaintiff.

In a large warehouse like this it is self-evident that loaded handtrucks were continuously passing and repassing through the alleyways during business hours. A railroad switch was near the east side of the building. It is inconceivable that the moving of a truck should cause this pile to fall at just

the moment when the plaintiff and his assistant were in the act of removing bags from the pile.

The accident is accounted for more reasonably by concluding that in some way the plaintiff, or his companion, pulled the pile over or dropped a bag while handling it. There is no evidence tending to show that the trembling of the floor had any connection with the plaintiff's injury. It is a mere guess, and a broad one at the best.

It follows that the judgment and order should, therefore, be reversed and the complaint dismissed, with costs to the appellant.

All concurred, except WOODWARD, J., dissenting.

Judgment and order reversed and the complaint dismissed, with costs to the appellant.